UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **LEROY BROWN, JR.** | **CIVIL ACTION NO. 18-832-P** |
| **VERSUS** | **CHIEF JUDGE HICKS** |
| **SHELIA COLEMAN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

### REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

### STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Leroy Brown, Jr., ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on June 21, 2018 and signed by Plaintiff on June 17, 2018. He is incarcerated at the David Wade Correctional Center in Homer, Louisiana, and claims his civil rights were violated by prison officials. Plaintiff names numerous defendants including Sgt. Shelia Coleman, Sgt. Morgan, Pam Hearn, Charles Parker, Alvin Harvey, Sgt. Benjamin, the Louisiana Department of Corrections, Secretary LeBlanc and his designee, Captain Coleman, Angie Huff, Col. Evans, Sgt. Webb, Sgt. Mims, Sgt. Dunnivant, Johnny Johnson, Major Coleman, Travis McKee, University Health Monroe, and Dr. Taylor.

Plaintiff claims he was tortured, and Defendants used his injured hip to inflict pain. On July 29, 2015, Plaintiff made a sick call because of intense pain in his hip due to a work

injury. He was referred to Dr. Hearn. Plaintiff made numerous sick calls regarding his hip injury. His hip was x-rayed several times. He claims that after the first x-ray, Dr. Hearn diagnosed him with mild arthritis. He repeatedly requested an MRI. Plaintiff claims his pain was severe and continued to worsen. He claims that because of his hip pain, he lost weight and his blood pressure was extremely high.

Plaintiff claims that in August of 2015, he was harassed by Sgt. Morgan.

In December of 2015, Plaintiff made a sick call request and was seen in the infirmary. He requested Celestone and Prednisone for right hip pain. He informed the medical staff that cancer had been ruled out by LSU Medical Center, x-rays had been taken, and Ibuprofen had been given to him.

Plaintiff made a routine sick call request in March of 2016 and was screened by healthcare personnel. He complained of a painful lower back spasm and numbness in his hamstrings caused by a fall from a bench that broke. He claims Tylenol and Aleve did not stop his pain. Ibuprofen and a muscle rub were ordered for him.

Plaintiff filed a routine sick call request and was seen in the infirmary on June 1, 2016. He complained of pain in his right hip joint caused by a fall several months prior. He claims x-rays had been previously taken and doctors had tried different medications which did not help his pain. Plaintiff filed a routine sick call request and was seen on the N5 tier on June 10, 2016. He complained of right hip pain caused by an injury while working. He claims x-rays had been previously taken. He claims his previous request for

a Cortisone shot was denied and he was instead given pills that did not have any effect on his pain.

Plaintiff claims that in June of 2016, he had an appointment at LSU Medical Center in Shreveport. He claims his blood pressure was 194/126. He claims his urologist strongly urged Dr. Hearn to refer him to LSU Medical Center in Shreveport for his hip. He claims that on July 15, 2016, his blood pressure was 221/101 and on January 27, 2016, it was 197/124.

Plaintiff filed a routine sick call request and was seen on July 5, 2016 by medical staff. He complained of right hip pain and requested a Cortisone shot. He was given over the counter Ibuprofen. Plaintiff filed a routine sick call request and was seen on July 13, 2016. He complained of right hip pain and requested a Cortisone shot.

Plaintiff claims that on July 30, 2016, his hip completely fractured. He claims he had to manually align his bones for support because there was no doctor at the facility since it was the weekend. He claims that on August 1, 2016, he made a sick call but had to report to work because he did not have a duty status. He claims that on August 3, 2016, he made another sick call. He claims he asked Col. Evans and Assistant Warden James Arnold to get him crutches. He claims Colonel Evans asked Nurse Norris about crutches for him and she lied and said she had not seen the sick call request. Plaintiff claims that later that morning, he dropped when he raised his hand for roll call and had to be carried to his cell by inmates. He claims that evening, the nurses refused to come to his cell, and he had to have two inmates carry him to them. He claims Nurse Norris laughed at him as he

described his intense pain and inability to walk to Nurse Hamilton. Plaintiff complains he was issued a duty status but no crutches. Plaintiff was issued a duty status effective August 3, 2016 through October 3, 2016 for no sports, no weightlifting and no pushing and pulling [Doc. 8, p. 52]. He claims that from August 3, 2016 until August 11, 2016, he had to use the back of a chair as a walker to get to and from the shower. Plaintiff claims that from August 1, 2016 until August 12, 2016, he could not get a doctor to see him about his broken hip.

Plaintiff claims that on August 12, 2016, he was transported to Conway Medical Center. He claims the transport van was not handicap accessible and the officers had to load him in the van which caused his bones to shift against one another.

Plaintiff claims he was seen by Dr. Taylor who informed him that his hip was broken. He claims Dr. Taylor told him that under the law he could not admit him to the hospital or give him medication for pain. He claims he was returned to the prison and given Tylenol/Ibuprofen for pain.

Plaintiff claims that on August 15, 2016, Dr. Taylor performed surgery on his hip. He claims Dr. Taylor misplaced the large titanium rod and as a result he still has pain. He claims Dr. Taylor was not able to find the misplacement until his third visit complaining about his inability to walk and intense pain. He claims Dr. Taylor told him that the misplacement had to do with a piece of titanium rod sticking through the bones. Plaintiff claims Dr. Taylor informed him that the rod needed to be removed. He claims Dr. Taylor

told him at his next examination that the rod could not be removed because the center of his hip was not healing properly.

Plaintiff claims his hip did not heal properly because of the abuse he suffered from the time of the injury through rehabilitation. He claims Sgt. Coleman, Sgt. Dunnivant and Sgt. Morgan worked with inmates Charles Parker, Alvin Harvey and others to continuously attack his injured hip.

Plaintiff claims that during rehabilitation, he received no assistance from Dr. Taylor or the DWCC medical personnel. He claims he did not receive a mandatory cushion or toilet stool.

Plaintiff claims that on August 18, 2016, Dr. Miller visited him in the infirmary. He claims Dr. Miller informed him that the only way he could return to the housing unit was to discontinue the Lortab he had been taking since surgery. Plaintiff was prescribed a medical duty status from August 19, 2016 until September 19, 2016 which provided he could use a walker to ambulate [Doc. 8, p. 55]. Plaintiff filed a routine sick call request and was seen on August 25, 2016. He complained that he needed the pain medication prescribed by Dr. Taylor and that his staples were ripping through his flesh and he was slowly bleeding for the last four days. Plaintiff filed a routine sick call request and was seen on August 29, 2016. He complained that he needed the pain medication prescribed by Dr. Taylor, a wheelchair because his walker was inadequate, and his hip examined for infection. He also complained that his right foot was swollen because of circulation problems. Plaintiff was prescribed a regular duty status with restrictions from August 29,

2016 through September 2, 2016 which provided him a wheelchair for 72 hours and allowed no sports [Doc. 8, p. 53]. Plaintiff was prescribed a regular duty status with restrictions from September 7, 2016 until December 7, 2016. He could be weight bearing with use of a walker and no sports [Doc. 8, p. 54].

Plaintiff filed a routine sick call request and was seen on September 8, 2016. He complained that he had a hard knot, needed medication to prevent his feet from swelling, and a set of rubber heels for his walker. Plaintiff filed a routine sick call request and was seen on September 21, 2016. He complained that he needed Tylenol and Ibuprofen for the pain in his right hip. He was given Ibuprofen.

Plaintiff made a routine sick call request and was seen on September 26, 2016. He complained that his right hip felt broken and he needed a pain shot because Ibuprofen and Tylenol did not work. He also complained that he was unable to walk with his walker. After Plaintiff was examined, his medical record was forwarded to the physician for review. The physician noted that Plaintiff was sent to the Orth Clinic and an x-ray was completed. Plaintiff also received an injection of Toradol to his hip. Plaintiff's x-rays did not indicate that his hip was broken but did indicate "adequate alignment of surgical devices [Doc. 9, p. 3].

Plaintiff made a sick call request and was seen on October 3, 2016. He complained that he needed a pain shot because his hip hurt all the time. Plaintiff made a sick call request and was seen on December 2, 2016.

Plaintiff made a request for medical treatment on August 8, 2017. He was seen and given a prescription. Plaintiff made a request for medical treatment on August 18, 2017. He was seen and given Ibuprofen.

Plaintiff made a routine sick call request and was seen on April 9, 2018. He complained that he needed crutches because it was too painful to walk on his surgically repaired hip. He claims the problem started the previous week and continued to worsen. He was prescribed Ibuprofen 800 mg twice daily for five days. Plaintiff made a request for medical treatment and was seen on April 16, 2018. He complained he needed crutches and adequate medication for the pain and swelling in his right hip, thigh, and feet. He also complained he needed to be transported to LSU Medical Center. He was examined by Nurse Hamilton and Dr. Hearn reviewed his sick call and ordered a repeat x-ray of his hip. The x-ray was performed on April 19, 2018 and no acute finding was documented [Doc. 21, p.7].

Plaintiff claims that as of April 15, 2018, he was unable to use his leg. He claims Dr. Hearn and Dr. Fuller refused to see him. He claims his hip felt like it was broken. He claims he made several sick calls. He claims he only received a five day supply of Ibuprofen from the infirmary. He claims he was only able to take three days of the supply because his medicine disappeared. He claims he was not given a duty status, crutches, or a wheelchair. He claims his pain was horrible. He claims inmates had to carry him to the gate to answer roll call. Plaintiff admits that none of the staff forced him to go to roll call

or work even though he did not have a duty status. Plaintiff claims it took several weeks, but he regained the ability to use his hip with pain.

Plaintiff filed a sick call request and was seen on April 25, 2018. He complained his blood pressure was 171/94 because of hip pain. He claimed he needed to go to LSU Medical Center to diagnose his hip pain.

Plaintiff claims he is being sexually harassed by inmate Alvin Harvey. He claims he filed a Prison Rape Elimination and numerous other grievances in the administrative remedy procedure against Alvin Harvey with no results. He claims that in December of 2015, inmates tampered with his hobby box to set him up for disciplinary action. He claims that on November 6, 2017, Alvin Harvey exited his cell at the same time to be close to him. He claims Alvin Harvey is totally consumed with him and has positioned a mirror in his cell in order to watch him. He claims Alvin Harvey has stalked him every day for approximately seven years. Plaintiff claims that because he rejected Alvin Harvey, he has engaged in activities to have disciplinary sanctions imposed on him and to cause damage to his surgically repaired hip.

Plaintiff claims he needs to see a doctor, preferably at University Health in Shreveport to treat his hip and prescribe medication for his hip pain and high blood pressure.

Plaintiff claims that in 2014, 2015, and 2016. Alvin Harvey and other inmates set him up for disciplinary actions by placing contraband in his hobby box and notifying Colonel Evans and other prison officials. Plaintiff claims Sgt. Morgan retaliated against

him. He claims Sgt. Mims, at the behest of inmates Parker, Johnson, and Harvey repeatedly tried to have disciplinary sanctions imposed against him. Plaintiff claims Sgt. Dunnivant attempted to have disciplinary sanctions imposed against him numerous times. He claims inmates have influence over DWCC personnel to attack their enemies. Plaintiff admits that security cameras were installed in the hobby craft room to keep inmate Harvey from taking locks off the other inmates' hobby craft boxes [Doc. 11, p. 6].

Plaintiff claims all the grievances he files in the administrative remedy procedure are denied by the violators even though the cameras show otherwise. Plaintiff seeks punitive and compensatory damages, injunctive relief, medical treatment, and a duty status.

## LAW AND ANALYSIS

**Medical Care**[1]

Plaintiff claims he was denied proper treatment for a hip injury and high blood pressure. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of, or inadequate medical care, is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the

---

[1] Many of Plaintiff's medical treatment claims are prescribed. However, the court does not have all grievances filed in the administrative remedy procedure and the dates they were pending. Therefore, the court is unable to determine with certainty the one year prescriptive period and will address these claims on the merits.

evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.

A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F.Supp. 801, 809 (E.D. Tex. 1998); Spears v.

McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff made numerous sick calls because of his hip pain beginning in July of 2015 and he was examined by the medical staff. His hip was x-rayed several times. He was also examined at LSU Medical Center, tested for cancer, x-rayed, and given Ibuprofen. Plaintiff was examined in December of 2015 for hip pain. He was examined in March of 2016 for hip pain and given Ibuprofen and a muscle rub. Plaintiff was examined for hip pain on June 1, 2016 and June 10, 2016. He was given medication for his pain. Plaintiff was seen at LSU Medical Center in June of 2016. He was seen on July 5, 2016 and given Ibuprofen for hip pain. He was seen again on July 13, 2016 for hip pain. Plaintiff claims his hip completely fractured on July 30, 2016 but he did not make a sick call until August 1, 2016 because there was no doctor at the facility on weekends. He made a sick call on August 3, 2016 and he admits he was issued a duty status. Plaintiff was transported to Conway Medical Center on August 12, 2016 and examined by Dr. Taylor. He was given Tylenol/Ibuprofen for pain.

On August 15, 2016, Dr. Taylor operated on Plaintiff's hip. On August 18, 2016, Dr. Miller visited Plaintiff in the infirmary and provided him with a duty status. Plaintiff was examined on August 25, 2016 and August 29, 2016. He was provided duty statuses. Plaintiff was examined on September 8, 2016 and September 21, 2016. He was given Ibuprofen. He was examined on September 26, 2016 and his record was forwarded to the physician for review. The physician noted that Plaintiff had been sent to the Ortho Clinic and an x-ray was completed. He was given an injection of Toradol. Plaintiff was examined

on October 3, 2016 and December 2, 2016. He was examined on August 8, 2017 and August 18, 2017. He was given a prescription.

Plaintiff was examined on April 9, 2018 for hip problems that started the previous week. He was given Ibuprofen 800 mg twice a day for five days. He was examined by Nurse Hamilton on April 16, 2018 and Dr. Hearn reviewed his sick call and ordered a repeat x-ray of his hip. Plaintiff's hip was x-rayed on April 19, 2018 and no acute finding was documented. Plaintiff was seen on April 25, 2018 for hip pain and high blood pressure.

Plaintiff complains he should have been given the medication prescribed by the hospital doctor. In Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir.1999), the Fifth Circuit found that the failure of a prison doctor to follow the recommendations of an outside treating physician did not present a material fact issue for deliberate indifference. Rather, it indicated that the doctors had differing opinions as to the appropriate method of treatment under the circumstances. Therefore, the medical staff was under no obligation to follow the recommendations of the non-prison physician. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Plaintiff does not allege how the alleged delay in receiving medical treatment by a doctor from August 1, 2016 until August 12, 2016 was based on deliberate indifference.

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have received an MRI. He claims he should have been prescribed different medications. He claims he should have been given crutches and a wheelchair. He claims he should have been given more duty statuses. He claims Dr. Taylor misplaced the large

titanium rod during surgery. He claims he did not receive assistance during rehabilitation and a cushion and toilet stool. He claims he should have seen a doctor instead of a nurse. He claims he should have been transported to LSU Medical Center. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Conclusory Allegations**

Plaintiff claims his hip did not heal properly because of the abuse he suffered beginning in 2015 at the time of his injury through his rehabilitation. He claims Defendants Coleman, Dunnivant, and Morgan continuously worked with inmates including Parker and Harvey to attack his hip. Plaintiff claims that in 2014, 2015, and 2016. Alvin Harvey and

other inmates set him up for disciplinary actions by placing contraband in his hobby box and notifying Colonel Evans and other prison officials. Plaintiff claims Sgt. Morgan retaliated against him. He claims Sgt. Mims, at the behest of inmates Parker, Johnson, and Harvey repeatedly tried to have disciplinary sanctions imposed against him. Plaintiff claims Sgt. Dunnivant attempted to have disciplinary sanctions imposed against him numerous times. He claims inmates have influence over DWCC personnel to attack their enemies. Plaintiff admits that security cameras were installed in the hobby craft room to keep inmate Harvey from taking locks off the other inmate hobby craft boxes [Doc. 11, p. 6].

A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations. Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986). The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations. Plaintiff has failed to do so as to these claims. Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**Prescription**

In <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims. The Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used. <u>Id</u>. at 280. In <u>Gates v. Spinks</u>, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as: "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." <u>Gates</u>, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions. The article subjects delictual actions to a liberative prescription of one year. <u>See</u> La. C.C. art. 3492. The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." <u>Watts v. Graves</u>, 720 F.2d 1416, 1417 (5th Cir. 1983). Finally, prescription on the claim is tolled while the administrative remedy procedure is pending. <u>See</u> <u>Harris v. Hegmann</u>, 198 F.3d 153 (5th Cir. 1999).

Plaintiff claims his civil rights were violated by Captain Morgan in August of 2015. Thus, prescription began to run as to this claim in August of 2015. The above entitled and numbered complaint was not signed by Plaintiff until June 17, 2018, and it was not filed by the Clerk of Court until June 21, 2018. Plaintiff's claim is therefore prescribed.

Accordingly, Plaintiff's civil rights claim should be dismissed as frivolous.

**Failure to Protect**

Plaintiff claims he is being sexually harassed by inmate Alvin Harvey. He claims he filed a Prison Rape Elimination and numerous other grievances in the administrative remedy procedure against Alvin Harvey with no results. He claims that in December of 2015, inmates tampered with his hobby box to set him up for disciplinary action. He claims that on November 6, 2017, Alvin Harvey exited his cell at the same time to be close to him. He claims Alvin Harvey is totally consumed with him and has positioned a mirror in his cell in order to watch him. He claims Alvin Harvey has stalked him every day for approximately seven years. Plaintiff claims that because he rejected Alvin Harvey, he has engaged in activities to have disciplinary sanctions imposed on him and to cause damage to his surgically repaired him.

The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged inmate violence is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

"It is not, however, every injury suffered by a prisoner at the hands of another that translates into constitutional liability for prison officials." Farmer, 114 S.Ct. at 1977. Instead, to prevail on a claim based on a failure to protect, the inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm" and that the defendant prison officials were deliberately indifferent to the inmate's health and safety.

Id. at 1977-78. The test for deliberate indifference is a subjective one. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference. Plaintiff does not allege that he was personally subject to an excessive risk of attack, nor does he allege prison officials were aware of any excessive risk posed him by the inmates. In fact, Plaintiff's claims are conclusory. As such, Plaintiff has not shown that Defendants disregarded a risk to his safety by failing to take reasonable measures to abate it. Farmer, 114 S.Ct. 1970.

Accordingly, the actions on the part of the prison officials do not evidence an attitude of deliberate indifference.

**Administrative Remedy Procedure**

Plaintiff claims his grievances are denied in the administrative remedy procedure by the violators even though there is camera evidence to support his grievances. Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D. La. 2000); Brown v. Dodson, et al., 863 F. Supp. 284 (W.D. Va. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance

procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Insofar as Plaintiff alleges Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

**Exhaustion**

Plaintiff makes numerous claims which occurred after he filed this complaint on June 21, 2018. Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e requires Plaintiff to properly exhaust available administrative remedies before filing a Section 1983 suit. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). This exhaustion requirement requires proper exhaustion of administrative remedies in accordance with prison procedures, and an untimely or otherwise procedurally defective grievance or appeal will not suffice. Woodford, 126 S.Ct. 2378. The Fifth Circuit has applied the requirement to claims such

as the use of excessive force, see Wendell, 162 F.3d at 887, and denial of medical care. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999). Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, dismissal may be appropriate when, the complaint on its face establishes the inmate's failure to exhaust. See Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007); Hicks v. Lingle, 370 Fed. Appx. 497, 498 (5th Cir.2010).

After reviewing Plaintiff's complaint, the court finds Plaintiff has failed to properly exhaust administrative remedies for claims which occurred after he filed his complaint on June 21, 2018. Accordingly, these claims should be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's civil rights claims occurring prior to June 21, 2018 be dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e) and his civil rights claims occurring after June 21, 2018 be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 14th day of September 2021.

Mark L. Hornsby
U.S. Magistrate Judge